UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY S. WARD,

       Plaintiff,

v.                                      Case No. 4:04-CV-148
                                      Hon. David W. McKeague

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                      /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

Plaintiff was born on January 1, 1966 and obtained a GED (AR 52, 77).[2] Plaintiff stated that she became disabled on September 30, 2001 (AR 52). She had previous employment as a cabinet builder, bartender, assistant manager of an auto parts store, factory line worker and construction worker (AR 91). Plaintiff identified her disabling conditions as autoimmune disease, back injury and chronic obstructive pulmonary disease (COPD) (AR 71). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 9, 2004 (AR 15-26). This decision, which was

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 25).  Second, the ALJ found that she suffered from severe impairments of an autoimmune disorder, COPD and degenerative disc disease of the spine (AR 25).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).  The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; occasionally bend, stoop, crouch, crawl; occasionally climb stairs and/or ramps; no climbing ladders, ropes and/or scaffolds; and no exposure to respiratory irritants or temperature changes.

(AR 25).  The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 26).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: assembler (40,000 jobs); inspector/packager (20,000 jobs); and cashier (12,000 jobs) (AR 26). The ALJ also found plaintiff's allegations regarding her limitations were generally credible, but not to the extent alleged (AR 25). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 26).

4

**III. ANALYSIS**

Plaintiff contends that the ALJ's decision is vague and "is not supported by substantial evidence because the ALJ did not adequately explain why he discredited the treating physician's opinions regarding disability nor did he explain how he arrived at his RFC evaluation."[3] Plaintiff's Brief at 16, 18.[4]

      **A.**     **ALJ's discussion to plaintiff's symptoms**

First, plaintiff contends that the ALJ's decision is defective due to a single statement in the decision that "the severity of claimant's symptoms is disproportionate in comparison to the usual severity of his [sic] condition" (AR 23). Plaintiff contends that the word "condition" refers to her autoimmune disease, stating that the only potentially disabling condition is her autoimmune disorder and that "nowhere does the ALJ state what the symptoms of this condition are nor does he state what the usual severity of this condition [sic]." Plaintiff's Brief at 18. Plaintiff relies on the opinion of her family doctor, Laurence Yung, D.O., who opined that her autoimmune disease includes the typical symptoms of an autoimmune disease (muscle pain, joint pain, fatigue, positive ANA, skin lesions, arthralgias, myalgias, headaches and Gastro-intestinal distress). *Id.* at 19.

The disputed sentence is part of a paragraph which reads as follows:

> After giving due consideration to the credibility, motivation, and the medical evidence, the Administrative Law Judge is persuaded that the claimant is generally credible, but not to the extent alleged. The Administrative Law Judge finds that claimant's reported activities are not indicative of her complaints of total disabling

---

[3] Plaintiff's brief does not include "a Statement of Errors, identifying and numbering each specific error of fact or law upon which plaintiff seeks reversal or remand" as required by the court's order directing filing of briefs. *See* docket no. 6.

[4] Plaintiff did not paginate her brief. The page numbers in this report and recommendation are those assigned to plaintiff's brief by the court's electronic case filing system.

>pain and fatigue. Therefore, the degree of pain and fatigue alleged to be disabling cannot be found as fact by the undersigned. The claimant is still able to do most of her household chores, drives without restrictions and does her own shopping. <u>The severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of his [sic] condition.</u> Therefore, the alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file.

(AR 23) (emphasis added).

In this portion of the decision, the ALJ apparently rejected plaintiff's claim that she suffered from "total disabling pain and fatigue" based upon her ability to perform various activities of daily living such as household chores, driving and shopping (AR 23). The underscored sentence is rather poorly worded and subject to more than one interpretation. Given the context of the entire paragraph, one could read the word "condition" as meaning plaintiff's "total disabling pain and fatigue" or her overall medical condition rather than the diagnosis of an "autoimmune disease."

Despite this lack of clarity, the court disagrees with plaintiff's contention that the ALJ's decision should be reversed or remanded based upon the underscored sentence. The ALJ's failure to discuss the medical evidence in this paragraph is not an error requiring reversal if the ALJ's decision is supported by the record. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Here the ALJ's decision is supported by the medical record, which includes plaintiff treatment with two rheumatologists, Timothy Swartz, M.D. and Vladimir Ognenovski, M.D. and the opinion of an examining neurologist, Elaine Koutanis, M.D. (AR 17-20). Plaintiff was diagnosed with a variety of conditions including chronic pain syndrome, dermal lesion, a history of bone pain, myalgias and fatigue, bronchospasm, a positive ANA and granuloma annulare (AR 127-30, 133, 153-54, 197-99). Nevertheless, these

6

physicians found no joint inflammation and noted that she had a good or full range of motion (AR 127-30, 133, 153-54, 197-99). None of these three physicians concluded that plaintiff required work restrictions (AR 127-30, 133, 153-54, 197-99).

The medical opinions of Drs. Swartz, Ognenovski and Koutainis provide substantial evidence to support the ALJ's conclusion that plaintiff's alleged symptoms were disproportionate to her medical condition. While the ALJ's decision was lacking in some respects, a remand will serve no useful purpose in this case. "No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989).[5]

### B. ALJ's evaluation of the treating physician's opinions

Next, plaintiff points out the ALJ's statement that Dr Yung's opinions are "not consistent with other substantial evidence of record from rheumatologists, who specialize in the diagnosis and treatment of autoimmune diseases" (AR 22). Plaintiff contends that the ALJ did not identify the inconsistencies in Dr. Yung's opinions and that, in fact, there are no inconsistencies. Plaintiff's Brief at 19. The thrust of plaintiff's argument is that the ALJ improperly discounted the opinions of her treating physician.

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of

---

[5] "When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).

physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2) (1997). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

As an initial matter, the ALJ rejected Dr. Yung's opinion that plaintiff is permanently disabled and unable to work even in a sedentary position (AR 20-22, 240-41). Although Dr. Yung was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986).

The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Next, the court disagrees with plaintiff's assertion that Dr. Yung's opinions are consistent with those expressed by plaintiff's rheumatologists, Timothy Swartz, M.D., and Vladimir Ognenovski, M.D. and the other medical evidence. That portion of the decision relating to the Dr. Yung's inconsistent statement appears in a paragraph which reads as follows:

> Dr. Yung's opinion that the claimant is disabled appears to be based on symptoms related to the doctor by the claimant and the record does not show the objective signs of the claimant's subjective symptoms. Dr. Yung's [sic] is not a rheumatologist but rather an osteopathic physician who specializes in manipulative medicine. Further, <u>Dr. Yung's opinion is not fully supported by objective medical evidence and not consistent with other substantial evidence of record from rheumatologist [sic], who specialize [sic] in the diagnosis and treatment of autoimmune diseases.</u> Therefore, [the] Administrative Law Judge gives very little weight to limitations Dr. Yung assessed as a result of her impairments.

(AR 22) (emphasis added).

"It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians." *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). In the present case, the ALJ could properly give greater weight to the opinions of the rheumatologists as specialists. *See* 20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). The rheumatologists noted that plaintiff was ANA positive, but neither doctor placed any restrictions on her activity (AR 127-30, 133-41, 153-54). On April 29, 2002, Dr. Ognenovski found that plaintiff's musculoskeletal examination "displayed full range of motion in all joints without any tenderness, deformities, or restricted range of motion," no soft tissue tenderness, and no sensory deficits (AR 129). On June 28, 2002, Dr. Ognenovski found no evidence

of systemic inflammation and no evidence of connective tissue disorder "despite being ANA positive" (AR 154). Neither rheumatologist placed plaintiff on work restrictions. The record reflects that plaintiff declined to accept further referrals to the rheumatologists in 2003 (AR 163).[6]

On April 3, 2003, Dr. Yung opined that plaintiff could not lift more than ten pounds and could not work more than one hour at a time (AR 237-38). Then, on April 4, 2004, Dr. Yung testified that over the course of a month of working 6 to 8 hours a day, plaintiff might miss half of the month or a straight week due to pain (AR 21, 241). Dr. Yung further testified that plaintiff's symptoms were subjective (AR 239). The extreme restrictions set by Dr. Yung are inconsistent with the rheumatologists' findings that plaintiff had full range of motion without tenderness and that plaintiff had no weight lifting or other work-related restrictions. Indeed, rather than placing plaintiff on any restrictions, Dr. Ognenovski discussed the need for plaintiff to embark on a conditioning exercise program (AR 154). Based on this record, the ALJ could properly conclude that Dr. Yung's opinion was inconsistent with the opinions expressed by the rheumatologists.

### C. The ALJ's RFC evaluation

Finally, plaintiff contends that the ALJ did not explain how he arrived at his RFC evaluation. Plaintiff's Brief at 16. The ALJ's decision did not explicitly state a medical source in support of his RFC determination (AR 21-23). However, the ALJ's failure to cite a medical source is not an error requiring reversal if the decision is supported by the record. *See Heston*, 245 F.3d at 534-35. Here, the ALJ's RFC determination mirrors the opinion expressed by the non-examining

---

[6] In January 2003, plaintiff reported that she could not see Dr. Swartz "because she owes him $300 bucks [sic]" and that she "didn't like the guy" in Ann Arbor (i.e., Dr. Ognenovski) (AR 163). At that time, plaintiff's treating physician, Constance Mumford, M.D., told plaintiff "that she has kind of put me in between a rock and a hard place because I don't know how to help her, I don't have the level of training she needs" (AR 163).

DDS physician (AR 23, 207-15). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

As the court previously discussed, plaintiff's treating physicians provided conflicting opinions regarding the extent of her restrictions. The ALJ could also properly rely on the DDS physician's assessment. *See Dixon*, 270 F.3d at 1178. The ALJ's failure to list the DDS physician's evaluation in the decision is harmless error. No remand is necessary in this case. *See Fisher*, 869 F.2d at 1057. Accordingly, the ALJ's RFC determination is supported by substantial evidence.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Dated: November 4, 2005              /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).